DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KRISHNA MCCOLLINS, | ) | |
| | ) | CASE NO.     1:10-CV-1193 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| THE HEALTH MANAGEMENT GROUP, | ) | |
| *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

Plaintiff Krishna McCollins filed her Complaint against Defendants Health Management

Group, Inc., Diet Center Worldwide, Inc. and Physicians Weight Loss Centers of America, Inc.

asserting five causes of action: 1) hostile work environment, 2) sex discrimination, 3) retaliation

for filing an Equal Employment Opportunity Commission ("EEOC") claim, 4) intentional

infliction of emotion distress ("IIED") and 5) breach of (employment) contract on April 22, 2010,

in Cuyahoga County Common Pleas Court.  On May 27, 2010, Defendants removed the case to

this Court.  ECF No. 1.  On October 29, 2010, Defendants moved for partial summary judgment

with respect to claims 3, 4 and 5: 3) retaliation for filing an EEOC claim, 4) intentional infliction

of emotion distress and 5) breach of (employment) contract.  ECF No. 31.

For the reasons discussed below, Defendants' motion is GRANTED in part and DENIED

in part.  Defendants' motion is granted on the retaliation and IIED claims because Plaintiff

McCollins cannot establish a *prima facie* case on her retaliation claim and she cannot establish

the fourth element of serious injury on her IIED claim.  Defendants' motion is denied on the

(1:10-CV-1193)

breach of contract claim because there is a genuine dispute of material fact regarding this cause of action.

## I.  Relevant Background

Charles Sekeres is the president of Defendant Health Management Group.  Defendants Diet Center Worldwide, Inc. and Physicians Weight Loss Centers of America, Inc. are owned by Defendant Health Management Group.  Plaintiff McCollins was employed by Defendants for over a decade.  She held various positions with Defendants over the years and her last job title was that of Director of Franchise Development.  As a Director of Franchise Development, McCollins' primary responsibility was selling franchises for which she received a base salary plus commissions that were based on the franchises she sold for Defendants.  McCollins alleges, *inter alia*, that numerous instances of sexual harassment and discrimination based on gender occurred during her employment with Defendants.

McCollins eventually filed claims with the Equal Employment Opportunity Commission alleging, *inter alia*, an equal pay violation.  In the EEOC charge, McCollins claims that Bret Smiley, who also worked for Defendants, was paid more than her for similar work.  In the instant case, McCollins contends that Defendants retaliated against her for filing the EEOC claim, that she suffered an intentional infliction of emotional distress and that Defendants breached her employment contract.  Defendants move the Court to grant them summary judgment with respect to these three causes of action.  The parties have fully briefed the issues and presented their respective positions at oral argument.  The Court rendered its ruling during oral argument and the following opinion supports that ruling.

-2-

(1:10-CV-1193)

## II.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion."  *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Rule 56 requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony."  *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (*citing Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit").  Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

(1:10-CV-1193)

must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson v. Liberty Lobby*, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250.  Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

### III.  Analysis

#### A.  Plaintiff McCollins cannot Establish a *Prima Facie* Case of Retaliation

It is well-settled that the *McDonnell Douglas* burden-shifting approach applies to retaliation claims.  *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).  Accordingly, in the absence of direct evidence, plaintiff must first establish a *prima facie* case showing that she (1) engaged in activity protected by Title VII, (2) defendant had knowledge that she engaged in protected activity, (3) defendant thereafter took an adverse employment action and (4) there is a causal connection between the protected activity and the adverse employment action.  *Id.*; *Randolph v. Ohio Dept. of Youth Serv.*, 453 F.3d 724 (6th Cir. 2006).  If the plaintiff establishes

-4-

(1:10-CV-1193)

a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse action taken against the plaintiff.  The plaintiff then bears the ultimate burden of persuading the court that the proffered nonretaliatory reasons are a pretext and that the actual reason was retaliation for engaging in a protected activity.  *Id.*

There is no dispute among the parties regarding the first two elements.

Element 1: McCollins' protected activity was the filing of the EEOC charge on March 25, 2010.

Element 2: Defendants had knowledge of the EEOC filing no earlier than March 28, 2010.

The following discussion focuses on the disputed third and fourth elements.

Element 3: McCollins relies primarily on two alleged adverse employment actions, 1) constructive discharge and 2) not being paid certain commissions after her resignation.

Element 4: Any adverse employment action must have occurred after March 28, 2010, in order to establish a causal connection between the protected activity and the adverse employment action.

**1. McCollins cannot show a causal connection (Element 4) regarding the alleged constructive discharge**

Defendants' primary argument is that McCollins actively pursued, was offered and accepted a job prior to her filing the EEOC charge.  Therefore, there can be no causal link between her filing the EEOC charge and her alleged constructive discharge (resignation).  McCollins filed the EEOC charge on March 25, 2008, had a fourth interview for a new job by March 20 and was offered or possibly accepted the job by March 26, 2008.  Defendants could not have known of the EEOC charge until March 28, 2008.  Even though McCollins may have felt she was forced to resign because of the alleged sexual harassment and hostile work environment,

-5-

(1:10-CV-1193)

these events occurred before the protected activity of filing the EEOC charge.  Thus, temporally,

retaliatory constructive discharge for the filing of her EEOC claim could not have happened.  For

that reason alone, the constructive discharge claim of retaliation fails.

> **2.  McCollins cannot show evidence of pretext for not being paid her commission after her resignation, assuming for the purposes of summary judgment only that she has established a *prima facie* case**

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to

articulate a legitimate, nonretaliatory reason for the adverse action taken against the plaintiff.

The plaintiff then bears the ultimate burden of persuading the court that the proffered

nonretaliatory reasons are a pretext and that the actual reason was retaliation for engaging in a

protected activity.  In order to demonstrate pretext, plaintiff must show by a preponderance of the

evidence that the defendant's stated reasons 1) have no basis in fact, 2) did not actually motivate

the adverse actions, or 3) were insufficient to motivate the adverse actions.  *Denhof v. City of

Grand Rapids*, 494 F.3d 534 (6th Cir.2007) (citations omitted).

For purposes of summary judgment only, the Court assumes that McCollins can establish

a *prima facie* case for retaliation on her claim that she was not paid commissions owed to her

after her resignation.  McCollins argues that since Bret Smiley was paid his commission after he

was terminated and that she was not paid her commissions after she resigned, then this

constitutes retaliation.  Assuming she has made her *prima facie* case on this claim, the burden

shifts to Defendants to articulate a legitimate nonretaliatory reason for not paying her.

Defendants claim a long-standing company policy exists that in order to receive

commissions, one must be currently employed with the company.  Further, Defendants claim

-6-

(1:10-CV-1193)

they made an exception to pay Smiley commission on his one and only sale after his termination. The reason for making this exception is that he was terminated as compared to voluntarily resigning. Additionally, Defendants terminated Smiley and paid his commission before McCollins filed her charges with the EEOC. Further, McCollins admitted during her deposition that it was a known rule to not be paid commissions if one is not employed with the company. The Court finds Defendants' reason to be a legitimate nonretaliatory reason.

Thus, the burden shifts back to McCollins to persuade the Court that this reason is pretext and the action was retaliatory. In order to show pretext, "The plaintiff must produce evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants intentionally discriminated against [plaintiff.]" *Larocque v. City of Eastpointe*, 2007 WL 2426441 (6th Cir. Aug. 24, 2007) (citations omitted). McCollins points to what she contends is contradictory testimony of Sekeres and Smiley regarding Smiley's termination showing that he was not actually terminated, but that it was mutual decision for him to leave the company. Sekeres stated he had to terminate Smiley because of his poor performance. Smiley stated that it (the job) did not work out and that he and Sekeres mutually determined that it was not a great thing. ECF No. 35 at 12. The Court finds that this testimony is not evidence showing that there is no basis in fact for Defendants' stated nonretaliatory reason. Nor could a jury reasonably infer from this testimony that Defendants intentionally discriminated against McCollins.

Chuck Sekeres testified that he "had to terminate" Bret Smiley. ECF No. 31-8 at 19. Plaintiff McCollins stated that Smiley was fired. ECF No. 31-3 at 11. The testimony of both

-7-

(1:10-CV-1193)

parties indicates that Smiley was terminated.  Further, this testimony could easily be interpreted to mean that when Sekeres presented Smiley with his decision to terminate him, Smiley simply agreed with Sekeres' reasons supporting the termination decision.  The Court does not find this to be evidence from which the jury could reasonably reject the Defendants' reason for not paying McCollins her commission after her resignation.  Additionally, in no way is this testimony evidence from which the jury could infer intentional discrimination against McCollins.  Sekeres and Smiley do not mention McCollins at all and these events occurred prior to the filing of the EEOC charges.  Thus, McCollins has not shown that Defendants' stated reason has no basis in fact.

Lastly, McCollins has not shown by a preponderance of the evidence that Defendants' stated nonretaliatory reason did not actually motivate the adverse actions or were insufficient to motivate the adverse actions.  McCollins merely speculates with respect to the remaining two reasons to establish pretext.

As a result, Defendants are GRANTED summary judgment on Plaintiff's third cause of action for retaliation.

### B.  McCollins cannot Establish the Fourth Element of her IIED Claim

To establish a claim of intentional infliction of emotional distress under Ohio law, a plaintiff must show: (1) the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to plaintiff; (2) the actor's conduct was so extreme as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community; (3) the actor's actions were the

-8-

(1:10-CV-1193)

proximate cause of plaintiff's psychic injury; and (4) mental anguish suffered by the plaintiff is

serious and of a nature that no reasonable person could be expected to endure it.  *Garcia v. ANR*

*Freight System*, 942 F.Supp. 351, 359 (N.D. Ohio 1996) (*citing Tschantz v. Ferguson*, 97 Ohio

App.3d 693, 702, 647 N.E.2d 507 (1994)); *Koenig v. City of Dayton*, 28 Ohio App.3d 70, 74,

502 N.E.2d 233 (1985); *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666

(1983); *Pyle v. Pyle*, 11 Ohio App.3d 31, 34, 463 N.E.2d 98 (1983).

The Ohio Supreme Court has described "serious emotional distress" as "emotional injury

which is both severe and debilitating . . . [it is] found where a reasonable person, normally

constituted, would be unable to cope adequately with the mental distress engendered by the

circumstances of the case."  *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983).  In

this case, Plaintiff McCollins has not demonstrated a "debilitating emotional injury."

McCollins primarily rests her argument that she suffered serious emotional injury on the

statement of her psychologist who stated, "Ms. McCollins' depression with anxiety (300.4) is a

serious psychological condition."  ECF No. 35 at 14.  The psychologist's statement alone is

insufficient for a legal finding of a serious emotional injury "in the absence of facts

substantiating the claim."  *McCarthy v. Cleveland Heights*, 65 Ohio App.3d 216, 218, 583

N.E.2d 981, 982-83 (1989).   Looking to the facts of record before the Court concerning

McCollins' emotional injury leads the Court to find that she has not satisfied the last element of

an IIED claim.

McCollins saw her psychologist a total of four (4) times over a period of approximately

six (6) months.  Her stated reason for seeing a psychologist was that she was not herself and that

(1:10-CV-1193)

she was having difficulty with many things that was abnormal for her.  She stated problems with

sleeping.  On each subsequent visit, the psychologist noted improvement and that she felt better.

She was prescribed medication prior to seeing the psychologist, but only took the medication for

seven (7) days.  McCollins took a two (2) week leave from work during which she went to

Florida with her family.  After resigning from her job with Defendants, McCollins began

working for another company within a few weeks, if not sooner.  Within a few months of starting

her new job, she mentioned to her psychologist that she liked her new job and that she felt much

better.  There is nothing else in the record to indicate to the Court that McCollins suffered or

continued to suffer any such severe and debilitating emotional infirmities.  Under the facts before

the Court in this case, McCollins has not presented any specific evidence of serious and

debilitating emotional trauma allowing a reasonable jury to conclude that she suffered serious

mental anguish.  *See Torres v. White, et al.*, 46 Fed.Appx 738, 2002 WL 2027244 (6th Cir. 2002)

(unpublished); *Garrett v. The Child Guidance Ctr. of Greater Cleveland*, 992 F.2d 1216, 1993

WL 127945 (6th Cir. 1993) (unpublished); *Lafferty v. Coopers and Lybrand*, 841 F.2d 1126,

1988 WL 19182 (6th Cir. 1988) (unpublished).

Accordingly, Defendants are GRANTED summary judgment on Plaintiff's fourth cause

of action for intentional infliction of emotional distress.

### C.  Defendants are not Entitled to Summary Judgment on McCollins' Contract Claim

Defendants dispute the existence of any contract concerning McCollins getting paid her

commissions.  Plaintiff, however, has submitted a memo signed by Sekeres regarding the

payment of commissions.  Defendants also point to the "long-standing company policy" of not

-10-

(1:10-CV-1193)

paying commissions unless one is still employed with the company.  However, Plaintiff points out that there is no written contract stating such a condition of employment is required to receive commissions.

Given the genuine dispute of material facts concerning Defendants' commission paying practices, summary judgment in favor of Defendants is inappropriate.  Accordingly, Defendants are DENIED summary judgment on Plaintiff's fifth cause of action for breach of contract.

### IV.  Conclusion

Defendants' motion for partial summary judgment (ECF No. 31) is GRANTED in part and DENIED in part.  Defendants are granted summary judgment on Plaintiff's third and fourth causes of action and denied summary judgment on Plaintiff's fifth cause of action.

Accordingly, this case shall proceed to trial on Plaintiff's first, second and fifth causes of action only.

IT IS SO ORDERED.


  May 6, 2011                                           s/ David D. Dowd, Jr.
Date                                                   David D. Dowd, Jr.
                                                      U.S. District Judge

-11-